# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* C.C.

**No. 21-0505** (Kanawha County 20-JA-615)

## MEMORANDUM DECISION

Petitioner Mother M.L., by counsel Edward Bullman, appeals the Circuit Court of Kanawha County's May 28, 2021, order terminating her parental rights to C.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-adjudicatory improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner suffered from mental health issues, including believing her home and child to be possessed. The DHHR further alleged that petitioner physically struck the child and caused the child to miss school. According to the petition, the biological father was incarcerated for attempted murder, and the child's stepfather/psychological father filed for divorce from petitioner and for emergency custody of the child due to petitioner's mental instability. The DHHR alleged that the stepfather was concerned for eleven-year-old C.C.'s safety after receiving text messages from him expressing fear due to petitioner's erratic behavior.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held a preliminary hearing in December of 2020 wherein a Child Protective Services ("CPS") worker testified that she met with petitioner and the child in October of 2020 after receiving a referral. The CPS worker enacted a temporary protection plan in November of 2020 after he received and reviewed audio of the child and petitioner arguing, with petitioner screaming and cursing and the child crying after clearly being struck. As a result of the protection plan, the child was placed with his step-grandmother. Once in her custody, the child disclosed emotional and physical abuse by petitioner. The worker testified that she spoke with school personnel and discovered that the child had missed a significant amount of school and is autistic. The worker testified that she interviewed petitioner after the child's removal from the home and questioned her about the child's disclosures of abuse. The worker stated that petitioner denied any emotional or physical abuse of the child. After hearing the evidence, the circuit court found probable cause to sustain the petition and ordered the DHHR to provide petitioner with services.

In January of 2021, the circuit court held an adjudicatory hearing wherein petitioner stipulated to emotionally abusing the child and causing the child to miss school. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also determined that the stepfather was the psychological father of the child and a nonabusing parent. After adjudication, the court granted petitioner's request for a post-adjudicatory improvement period. The court ordered that petitioner participate in a psychological evaluation, random drug screens, supervised visitations, and parenting and adult life skills classes with instructions specifically tailored to a child with autism.

The circuit court convened for a dispositional hearing in March of 2021. At the hearing, a CPS worker testified that petitioner had failed to participate in parenting or adult life skills classes since February of 2021 and had stopped drug screening. The worker acknowledged that petitioner participated in some screens in March of 2021, which were negative. The worker noted that petitioner missed two scheduled appointments for her psychological evaluation before attending the third scheduled appointment. The worker also testified that petitioner failed to attend a scheduled multidisciplinary team meeting in February of 2021. As a result, the worker testified that petitioner made little overall progress complying with the terms and conditions of her improvement period. The circuit court continued the hearing so the parties could receive the psychological evaluation report.

A licensed psychologist conducted a forensic psychological evaluation of petitioner and issued a report in April of 2021. The report provided that petitioner was referred for "issues includ[ing] substance abuse, mental health concerns, domestic violence, neglect, and physical abuse." According to the report, petitioner was given provisional diagnoses of unspecified substance use disorder, unspecified psychotic disorder, partner relational problem, and parent-child relational problem. The report indicated that petitioner's prognosis was poor, "largely due to denial of referral concerns . . . and defensive responding" in the evaluation.

The circuit court reconvened to complete the dispositional hearing in May of 2021. The DHHR entered the psychological evaluation report into evidence. A CPS worker testified that the DHHR recommended termination of petitioner's parental rights. The worker testified that petitioner did not participate in services between March of 2021 and May 5, 2021, and had not

participated in a drug screen since March 19, 2021. The worker acknowledged that petitioner had participated in some parenting classes at her home earlier in the proceedings but testified that petitioner did not substantially benefit from the courses. The worker further indicated that petitioner failed to acknowledge that she had any mental health issues, despite the findings in the psychological evaluation. Next, petitioner testified that she had not been participating in drug screens due to a lack of transportation. Petitioner testified that she was unemployed, as she had been jobless for many years to raise C.C. until the child's stepfather filed for divorce. Petitioner testified that she had no plans to obtain employment but would instead rely on alimony from the divorce. Petitioner explained that the stepfather is "the one that started this. He [is] hindering everything." Petitioner admitted on cross-examination that she had once held a cosmetologist license, but she needed to pay the licensure fees and become current on continuing education hours in order to have that license reinstated. Petitioner stated that the stepfather was responsible for her inability to pay the fees. Upon questioning regarding her mental health, petitioner stated that she did not "believe that [she had] any mental health issues."

Ultimately, the circuit court found that petitioner had physically and emotionally abused the child, failed to acknowledge or correct those issues, and failed to participate in services offered by the DHHR. Further, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was necessary to terminate petitioner's parental rights to the child. Accordingly, the circuit court terminated petitioner's parental rights by its May 28, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

---

[2]The stepfather is a nonabusing parent, and the permanency plan is for the child to remain in his care as a legal guardian. The biological father voluntarily relinquished his parental rights and has not filed an appeal.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without giving her the chance to participate in an improvement period, demonstrate her ability to comply with an improvement period, and successfully complete the terms and conditions of said improvement period. Petitioner contends that she participated in some services during her post-adjudicatory improvement period and demonstrated that when she had available transportation and was not impaired by her mental illness, she could fully participate. Petitioner further argues that the court erred by not allowing for the implementation of recommendations from her psychological evaluation, including a domestic violence intervention program, individual psychotherapy, and a psychiatric referral before terminating her parental rights. We find petitioner's arguments without merit.

This Court has held that

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 2, *In re C.M.*, 235 W. Va. 16, 770 S.E.2d 516 (2015). Further, West Virginia Code § 49-4-610(7) provides that "the court shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period." This Court has reiterated that "a circuit court always has the authority to terminate an improvement period if there is evidence that the parent is not following the conditions prescribed or is failing to make improvement." *In re Brian D.*, 194 W. Va. 623, 636, 461 S.E.2d 129, 142 (1995).

In this case, the circuit court heard evidence that petitioner failed to participate in parenting and adult life skills classes, as well as missed random drug screenings. Petitioner also failed to attend two scheduled psychological evaluations and a multidisciplinary team meeting. Although petitioner claims that these transgressions were correctable with proper transportation and mental health treatment, petitioner continued to deny any mental health issues throughout the proceedings. A CPS worker also opined that petitioner had made no progress in recognizing her parenting deficits when she did participate in services. This evidence underlies the most concerning issue: petitioner's failure to acknowledge the conditions of abuse and neglect as the proceedings progressed. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As demonstrated by the evidence, petitioner failed to take responsibility for her actions and how she

4

abused and neglected the child, choosing instead to blame the child's stepfather, transportation, and the DHHR for the filing of the petition. Based on this evidence, the circuit court did not abuse its discretion in terminating petitioner's improvement period, as her failure to take responsibility made the conditions of abuse and neglect untreatable. Accordingly, petitioner is entitled to no relief in this regard.

Finally, petitioner argues that the circuit court erred in terminating her parental rights because there was insufficient evidence to support the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner asserts that the circuit court should have given her a chance to continue with services and attempt reunification with the child. We disagree with petitioner.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon its findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence demonstrates that petitioner failed to respond to or follow through with a reasonable family case plan. Although petitioner complied with some aspects of the case plan, including completing the forensic psychological evaluation after a third appointment and some drug screens and parenting classes, petitioner ceased participation in services several times during the proceedings. Critically, the circuit court found at the dispositional hearing in May of 2021 that petitioner had ceased participating in services in mid-March of 2021. Furthermore, the evidence supports the termination of petitioner's parental rights as necessary for the child's welfare, as the court found that he required permanency that could not be achieved due to petitioner's refusal to correct the conditions of abuse and neglect at issue.

Based upon these findings, petitioner was not entitled to a less-restrictive dispositional alternative. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 28, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton